# UNITED STATES DISTRICT COURT
for the
District of Kansas

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>a black Dell Inspiron N5110 #D4YBLR1, and<br>a black Verizon Galaxy S7 cellular telephone<br>currently located at 1211 S. Emporia, Wichita, Kansas | ) ) ) ) ) ) ) | Case No. 16-m-6185-01-KGG |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
The device described in Attachment A, currently in the possession of HSI and the Wichita Police Department, Internet Crimes Against Children Task Force, located at 1211 S. Emporia, Wichita, Kansas

located in the _____ District of _____Kansas_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2252 - 2252A | Distribution, Receipt and Possession of Child Pornography |

The application is based on these facts:
See Attached Affidavit of Probable Cause.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

John V. Ferreira, Special Agent (HSI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Dec. 14, 2016

*Judge's signature*

City and state: Wichita, KS

The Honorable Kenneth G. Gale
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>BLACK DELL INSPIRON N5110 #D4YBLR1<br><br>BLACK VERIZON GALAXY S7 CELLULAR TELEPHONE<br><br>CURRENTLY IN THE POSSESSION OF HSI AND THE WICHITA POLICE DEPARTMENT, INTERNET CRIMES AGAINST CHILDREN TASK FORCE, LOCATED AT 1211 S. EMPORIA, WICHITA, KANSAS.. | CASE NO. _____ |

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, John V. Ferreira, Special Agent of Homeland Security Investigations, being duly sworn, do hereby depose and state:

### INTRODUCTION AND AGENT BACKGROUND

1. I, Special Agent (SA) John V. Ferreira of the Department of Homeland Security (DHS), Homeland Security Investigations (HSI), am assigned to the Office of HSI Wichita, Kansas. I have been employed by HSI for over 11 years. Prior to service with HSI, I served for 9 years as a police officer for the Arizona Department of Public Safety. During my employment with HSI, I have had the opportunity to conduct, coordinate and participate in many investigations relating to Child Pornography and the Sexual Exploitation of Children. I have had the opportunity to conduct, coordinate, and participate in investigations of violations of Title 18, United States Code (U.S.C) § 2252, certain activities relating to material involving the sexual exploitation of minors, and

1

Title 18, U.S.C. § 2252A, certain activities relating to material constituting or containing child pornography.

2. As a special agent of HSI, I am authorized to investigate violations of laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States, including violations of Title 18, United States Code §2252 and 2252A. I have participated in a wide variety of criminal investigations, to include violent crime, crimes against children, document fraud, benefits fraud, illegal entry to the United States, and other federal crimes. I have participated in the preparation and execution of many search warrants, involving the sexual exploitation of minors and certain activities relating to material constituting or containing child pornography.

3. As will be shown below, there is probable cause to believe that computer and digital devices were used to distribute, receive, and possess child pornography, in violation of 18 U.S.C. §§ 2252 and 2252A, and I submit this application and affidavit in support of a search warrant authorizing the search of the devices further described in Attachment A. Located within the devices to be searched, I seek to seize evidence, fruits, and instrumentalities of the foregoing criminal violations, which relate to the knowing transportation, shipment, receipt, possession, and distribution of child pornography, as further described in Attachment B.

4. The information in this affidavit is information known to me as a result of my participation in this investigation or is information that has been communicated to me by other law enforcement investigators and witnesses, involved in this investigation. Since this affidavit is being submitted for the limited purpose of supporting a search warrant, I

have not included each and every fact known to me concerning this investigation. Instead, I have set forth only those facts that I believe are necessary to establish the existence of probable cause to support a search warrant.

## DEFINITIONS

5. The following definitions apply to this Affidavit and Attachment B:

    a. **"Child Pornography"** includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction was a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. *See* 18 U.S.C. § 2256(8).

    b. **"Minor"** means any person under the age of 18 years. *See* 18 U.S.C. § 2256(1).

    c. **"Sexually explicit conduct"** applies to visual depictions that involve the use of a minor, *see* 18 U.S.C. § 2256(8) (A), or that have been created, adapted, or modified to appear to depict an identifiable minor, *see* 18 U.S.C. § 2256(8) (C). In those contexts, the term refers to actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person. *See* 18 U.S.C. § 2256(2) (A).

    d. **"Visual depictions"** include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

    e. **"Child Erotica"** means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

    f. **"Computer"** refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." *See* 18 U.S.C. § 1030(e) (1). This includes devices commonly known as laptops, desktops, netbooks, personal digital assistants, and smartphones, but is not limited to those devices.

Page 3

g. ***"Computer hardware"*** consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, CDs and DVDs, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

h. ***"Computer software"*** is digital information that can be interpreted by a computer and any of its related components to direct the way it works. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

i. ***"Computer passwords and data security devices"*** consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

j. ***"Computer-related documentation"*** consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

k. ***"Internet Protocol address"*** or "IP address" refers to a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

l. ***"Peer-to-peer file-sharing"*** (P2P) is a method of communication available to Internet users through the use of special software. Computers linked together through the Internet using this software form a network that allows for the sharing of digital files between users on the network. A user first obtains the P2P software, which can be downloaded from the Internet. In general, P2P software allows the user to set up files on a computer to be shared with others running compatible P2P software.

      m.    **"*BitTorrent*"** is a type of P2P software, which sets up its searches by keywords typically on torrent websites, "Torrent Index Website". The results from the "Torrent Index Website" of a keyword search are displayed to the user. The "Torrent Index Website" does not contain the actual files requested to be retrieved however this website will give the user who is searching information on what ".torrent" file out on the network have files with similar keywords within them. Users who know other users who utilize .torrent files can also share this information between each other.

A .torrent file defines the files being shared. The .torrent file contains information of file names, file sizes, file path(s), the total number of pieces, the size of each piece, and the SHA-1 hash value for each piece, torrent type, whether it is public or private. The .torrent file does not contain the desired content but simply defines the content. The .torrent file usually identifies at least one tracker. A tracker is a computer that coordinates the peers that are sharing the content, the files the user desires to obtain. A user can also find other additional peers who have the desired content by using distributed hash tables (DHT) and peer exchange (PEX.) With DHT the client software maintains a small list of other BitTorrent clients (nodes). When the clients want to find a .torrent it will ask each DHT node in its list if they know of peers sharing the requested content defined in the .torrent file. If the node knows of any peers, it replies. If it does not know if forwards the request to the other DHT nodes in its own list. With PEX, the client can exchange lists of peers that are interested in the same content. This process is similar to "swarming downloads" on the Gnutella network.

A .torrent file is uniquely identified by their "infohash." The infohash is the SHA-1 hash value to the set of data describing the files referenced in the .torrent file. That data is: the number of pieces, the size of the pieces, the SHA-1 hash value of the pieces, the file sizes, names and path(s) of the files making up the desired files and whether the .torrent file is public or private.

Multiple .torrent files can and do exist for the same content. This occurs since the .torrent file can reference different trackers and can have different comments. The infohash is the same only if files, file names, and file order are the same. If the file order is different, the SHA-1 hash value of the pieces would be different since they would be made up of different data. Clients do not need the identical .torrent to exchange files, but the .torrent must have the same infohash.

## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY

6.    Based on my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers, computer technology and the

Page 5

Internet have revolutionized the manner in which child pornography is produced and distributed.

a. Computers basically serve four functions in connection with child pornography: production, communication, distribution, and storage.

b. Child pornographers can transpose photographic images from a camera into a computer-readable format with a scanner. With digital cameras, the images can be transferred directly onto a computer. A modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Through the Internet, electronic contact can be made to literally millions of computers around the world.

c. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution.

d. The Internet affords collectors of child pornography several different venues for obtaining, viewing and trading child pornography in a relatively secure and anonymous fashion. The venues include services offered by Internet Portals such as Yahoo!, MSN (Hotmail/Outlook), and Google (Gmail), among others. These online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. Other services include remote storage, such as DropBox or SkyDrive. Through these services, a user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

e. Because of the anonymity associated with the Internet, collectors of child pornography have been known to use more than one avenue for obtaining child pornography or communicating about child pornography. For instance, an individual with an interest in children may meet an individual on an online social networking forum, engage in private discussions via a different messaging application, and then trade images via password protected storage or an email account.

f. As with most digital technology, communications made from a computer are often saved or stored on that computer. Storing this information can be intentional, for example, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in "bookmarked" files. Digital information can also be retained unintentionally. Traces of the path of an electronic communication may be automatically stored in many places, such as temporary

files or ISP client software, among others. In addition to electronic communications, a computer user's Internet activities generally leave traces in a computer's web cache and Internet history files. A forensic examiner often can recover evidence that shows whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files that were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data.

7. Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following two reasons:

   a. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

   b. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

8. In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit (CPU). In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be

essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media).

9. Furthermore, because there is probable cause to believe that the computer and its storage devices are all instrumentalities of crimes, within the meaning of 18 U.S.C. §§ 2251 through 2256, they should all be seized as such.

## SEARCH METHODOLOGY TO BE EMPLOYED

10. The search procedure of electronic data contained in computer hardware, computer software, and/or memory storage devices may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

   a. triage of computer systems to determine what, if any, peripheral devices or digital storage units have been connected to such computer systems, as well as a preliminary scan of image files contained on such systems and digital storage devices to help identify any other relevant evidence or potential victims;

   b. examination of all of the data contained in such computer hardware, computer software, or memory storage devices to view the data and determine whether that data falls within the items to be seized as set forth herein;

   c. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

   d. surveying various file directories and the individual files they contain;

   e. opening files in order to determine their contents;

   f. scanning storage areas;

   g. performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment B; and

Page 8

      h.      performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment B.

11. The government will retain a forensic image of each electronic storage device subjected to analysis for a number of reasons, including proving the authenticity of evidence to be used at trial; responding to questions regarding the corruption of data; establishing the chain of custody of data; refuting claims of fabricating, tampering, or destroying data; and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

## INVESTIGATION/PROBABLE CAUSE

12. On July 27, 2016, Detective Wright used a BitTorrent application to conduct undercover investigations into the internet sharing of child pornography. This application allowed Detective Wright to download files from a specific user, rather than several different users.

13. During this investigation a computer sharing child pornography was located on the BitTorrent file sharing network. Detective Wright downloaded files from a sharing client which had an IP address 68.103.1.15 which was recorded along with the date and time of the file transfer. The date and time for the download was July 27, 2016 between 11:02:41 and 11:34:50 GMT -05:00. The software version used on BitTorrent was Tribler 6.5.2.

14. The infohash was f69735f637a9b137cce47045d2b44d9aa21766ee and contained 210 files broken into 660 pieces. On July 27, 2016 the client sharing this infohash acknowledged it had 659 of the 660 pieces. Detective Wright successfully downloaded approximately 200 files. All of the files were located in a folder titled "pedo pics real pthc lolita underage preteen babyshivid."

15. Three examples of files located within the folder are as follows:

   a. File "4yo_anja..jpg" was completely downloaded. The picture depicts a white female who was nude from the waist up. Her bottom half is not viewed. She had her hand on an adult white male's erect penis. She appeared to be under the age of five.

   b. File "girls 0 to 5 having sex with men 1122934963924.jpg" was completely downloaded. The picture depicts a white female who is lying on her back and appeared to be sleeping. There was an adult white male's erect penis placed on her mouth, which is closed. She appeared to be under the age of five.

   c. File "girls 0 to 5 having sex with men man rub dick with baby m 53636.jpg" was completely downloaded. The picture depicts an adult white male's erect penis under a nude female toddler. The penis was touching her buttocks and the focus of the picture is the adult penis and female vaginal area. The female child appeared to be under the age of three.

16. Detective Wright utilized Maxmind.com to research the assignment to customers for the IP address 68.103.1.15. Maxmind is a website that utilizes databases of IP address usage with online purchasing and accessing bank accounts and their geographical location when used. This information is typically collected to assist in identifying fraud when using those avenues. The IP address 68.103.1.15 was listed as being used by Cox Communications to give customers Internet access in the state of Kansas.

17. Detective Wright requested assistance from SA John Ferreira, Homeland Security in obtaining a federal summons for the subscriber information for the user behind the IP address 68.103.1.15 when it was used to share the files of child pornography on July 27, 2016. SA Ferreira obtained the summons and served it to Cox Communications. Cox sent the subscriber information for this IP address back to SA Ferreira. The subscriber was identified as Charles Gann, 1406 Harding St., Great Bend, Kansas with a phone number 620-603-6495.

18. On December 5, 2016, Detective Wright and SA Ferreira drove to 1406 Harding St., Great Bend, Kansas to make contact with Charles Gann. Upon arrival at the residence, Detective Wright spoke with a woman identified as Shawn Snowdon. Ms. Snowdon was the live-in girlfriend of Gann and the two have twin sons together, who are 9 years old.

19. Detective Wright explained the nature of the investigation and asked if she knew who might be sharing child pornography from the residence. Ms. Snowdon began to cry and denied it was her. She then explained that she had observed photographs of younger girls on Gann's phone. Ms. Snowdon said she confronted him about the discovery, but he disclaimed any attraction to young girls. She said she suspected he was attracted to child pornography and shortly thereafter, noticed Gann had password protected his cellular telephone and his laptop computer. Ms. Snowdon told the investigators that Gann was currently on the road as a truck driver and should be returning Friday that week. She indicated Gann had his cellular phone and laptop computer with him on the trip.

20. SA Ferreira contacted the trucking company that employed Gann and determined he would be returning to Great Bend on Friday.

21. On Friday, December 9, 2016, SA Ferreira and Detective Wright conducted surveillance at 1406 Harding St., Great Bend, Kansas. SA Ferreira observed a gray rental car arrive at the residence. SA Ferreira and Detective Wright made contact with Gann, the sole occupant of the vehicle.

22. Detective Wright explained the nature of the investigation and stated they knew he was sharing child pornography from the residence. Gann nodded his head in affirmation.

23. Detective Wright asked if he had his laptop and phone in the car, to which he stated they were. Detective Wright asked if investigators could retrieve the laptop and cellular phone from his rental vehicle and Gann agreed. Gann asked if he was being arrested. Detective Wright told Gann he was not under arrest.

24. Investigators located a black Dell Inspiron N5110 #D4YBLR1 and a black Verizon Galaxy S7 cellular telephone. Both items were collected and later transported to the WPD ICAC Unit evidence room, where they are currently located.

25. Detective Wright asked if Gann would be willing to come to the Great Bend PD and talk with the investigators. Gann agreed and was transported there by a uniformed Great Bend police officer.

26. Once at the Great Bend PD, SA Ferreira informed Gann of his Miranda Rights. Gann signed a Miranda Waiver form and agreed to speak with the investigators without the presence of an attorney. The interview was audio recorded.

27. During the interview, Gann admitted to downloading child pornography on four to five occasions using Tribler and the search term "child pornography." Gann said he was curious about child pornography. Gann also said his age of preference was younger teens, in the age range of 13 to 15 years. He said he was only interested in females. Gann said he used his laptop computer to download Tribler, which he then used to download child pornography. Gann indicated he didn't know he was sharing child pornography, but understood the concept of file sharing programs. Gann said he downloaded image and video files of child pornography, but always deleted them.

28. Gann also indicated he used a couple of sexual dating websites, one of which was alt.com. On those websites, Gann was contacted by several people who appeared to be interested in him having sex with their children. Gann stated he never engaged in physical contact with these children and only participated in conversations about sexual contact with the children. Gann indicated the majority of that activity was on the cellular telephone. Gann provided user names of "analplease14" and "kinkytaboo14."

## CONCLUSION

29. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that the computer devices described above have been involved in the distribution, receipt, and possession of child pornography. I respectfully submit that there is probable cause to believe that the computer devices have violated 18 U.S.C. §§ 2252 and 2252A. Additionally, there is probable cause to believe that evidence of criminal offenses, namely, violations of 18 U.S.C. §§ 2252 and 2252A, is located in the computer devices described above, and this evidence, listed in Attachment B to this affidavit, which is incorporated herein by reference, is contraband, the fruits of crime, or

things otherwise criminally possessed, or property which is or has been used as the means of committing the foregoing offenses.

30. Therefore, I respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

John V. Ferreira
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me in my presence on this 14th day of December, 2016.

THE HONORABLE KENNETH G. GALE
United States Magistrate Judge

## ATTACHMENT A

### DESCRIPTION OF COMPUTER DEVICES TO BE SEARCHED

black Dell Inspiron N5110 #D4YBLR1
black Verizon Galaxy S7 cellular telephone

These items are currently in the possession of HSI and the Wichita Police Department, Internet Crimes Against Children Task Force, located at 1211 S. Emporia, Wichita, Kansas.

## ATTACHMENT B
### Particular Things to be seized

1. All records and data on the devices described in Attachment A that relate to violations of Title 18, U.S.C. §§ 2252 and 2252A, Distribution/Receipt/Possession of Child Pornography, including:

    a. Any and all computer files, in any format or medium, of child pornography, i.e., visual depictions of minors engaged in sexually explicit conduct, or child erotica.

    b. Any and all device software or applications that may be or are used to visually depict child pornography or child erotica; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or produce, distribute, receive, or possess child pornography, child erotica, or information pertaining to an interest in child pornography or child erotica.

    c. Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs, including but not limited to P2P software, which may be used to seek, collect, trade, store, produce, alter, display or communicate about child pornography.

    d. Any records or data pertaining to the possession, receipt, distribution or production of child pornography or to the possession, receipt, distribution or production of visual depictions of minors engaged in sexually explicit conduct.

    e. Any records or data concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

    f. Any records or data concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

    g. Any records or data that concern online storage or other remote computer storage, including but not limited to software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

    h. Any records reflecting personal contact with minors engaged in sexually explicit conduct.

    i. Any and all diaries, address books, names, and lists of names and addresses of individuals who may have been contacted by or in contact with the operator of the computer using the Ares program, by use of the computer or by other means for

the purpose of distributing or receiving child pornography or visual depictions of minors engaged in sexually explicit conduct.

j. Any records concerning the receipt, transmission, or possession of child pornography or visual depictions of minors engaged in sexually explicit conduct.

k. Any records concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

l. Any records concerning membership in online groups, clubs, or services that provides or makes accessible child pornography to members.

m. Any records that concern any accounts with the internet service provider Cox Communications, or any other internet service provider.

n. Any records that concern online storage or other remote computer storage, including but not limited to software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

o. Any records pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography or any visual depiction of minors engaged in sexually explicit conduct.

p. Any and all documents, records, or correspondence reflecting personal contact with minors engaged in sexually explicit conduct.

2. Records or data showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted.

3. Records or data showing access or connection of the devices described in Attachment A by any other device.